CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 9 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

MAURICE HAWKINS,                )
                                )
    Plaintiff,               )    **Case No. 7:04CV00216**
                                )
v.                              )    <u>**MEMORANDUM OPINION**</u>
                                )
D. M. MILLS,                    )    **By: Hon. Glen E. Conrad**
                                )    **United States District Judge**
    Defendant.               )

Maurice Hawkins, a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4.[1] The plaintiff challenges the defendant's decision to defer any action on the plaintiff's Common Fare Diet application for nine months.[2] By order entered July 8, 2005, the case was referred to United States Magistrate Judge Michael F. Urbanski for appropriate proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is presently before the court for review of the magistrate judge's Report and Recommendation, in which he recommends granting the motion for summary judgment filed by the defendant. The plaintiff has filed objections to the magistrate judge's report. For the reasons set forth below, the court will adopt the magistrate judge's Report and Recommendation and grant the defendant's motion for summary judgment.

---

[1] The plaintiff refers to RFRA in his complaint. In <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997), the United States Supreme court invalidated RFRA as it applied to states and localities. Therefore, the magistrate judge construed the plaintiff's RFRA claim as one under RFRA's successor statute, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5.

[2] The defendant works for Central Classification Services, a Richmond-based division of the Virginia Department of Corrections (VDOC), which reviews all requests for the Common Fare Diet.

## BACKGROUND

The plaintiff first applied for the Common Fare Diet on December 29, 2003. At that time, the plaintiff indicated that he had practiced the Siddha Yoga religion for five years, and that the Common Fare Diet was "kosher" to his beliefs. The plaintiff's application was denied on March 23, 2004, on the basis that the plaintiff's stated religion did not require the diet.

On April 16, 2004, the plaintiff filed a second application to receive the Common Fare Diet. On this application, the plaintiff indicated that he had been a member of the Nation of Islam since 1997. Although the plaintiff's application was approved by the warden, the defendant decided to defer any action for six months, so that the plaintiff could participate in religious activities, including Ramadan. During the six-month period, the plaintiff obtained religious materials. However, he withdrew from Ramadan because of a dispute with an officer.

After the plaintiff's application was deferred for six months, he filed an action against the Commonwealth of Virginia in the Circuit Court for the County of Wise. The action was dismissed on December 27, 2004.

On December 9, 2004, the plaintiff filed a third application to receive the Common Fare Diet. The plaintiff indicated that he had been a member of the Nation of Islam for "years." The Institutional Classification Authority recommended denying the plaintiff's request, since he had withdrawn from Ramadan. However, on February 23, 2005, the defendant decided to defer any action on the plaintiff's application for nine months, so that the plaintiff could participate in religious services, programs, or classes. The defendant advised the plaintiff that he could reapply after he participated in Ramadan 2005.

2

On April 13, 2005, the plaintiff filed this action against the defendant in his individual capacity only, seeking monetary damages. The plaintiff did not seek injunctive or declaratory relief. The defendant filed a motion for summary judgment on July 5, 2005. The magistrate judge has issued a Report and Recommendation in which he recommends granting the defendant's motion. The parties were advised that they were entitled to file written objections to the report within ten days. The parties were further advised that failure to file specific objections would be deemed to constitute a waiver of the right to contest the magistrate judge's findings and conclusions. Before the ten-day period expired, the plaintiff filed objections to certain portions of the magistrate judge's report.[3]

## STANDARD OF REVIEW

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and this court retains the responsibility to make a final determination. Id. at 270-271. The court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). As a result, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

---

[3] The plaintiff objects to the magistrate judge's report with regard to the plaintiff's First Amendment claim. The plaintiff also objects to the magistrate judge's determination that the defendant is entitled to qualified immunity.

On the same date that the plaintiff filed his objections to the magistrate judge's report, he filed a motion to incorporate certain attachments into the record (docket # 17). The plaintiff had previously submitted all of the attachments, except a copy of the VDOC's operating procedure for inmate religious programs. To the extent that plaintiff wishes to incorporate this document into the record, the court will grant the plaintiff's motion.

The plaintiff also filed a motion for a jury trial. Because the court concludes that the defendant is entitled to summary judgment, the motion for a jury trial will be denied.

3

With respect to the defendant's motion for summary judgment, such a motion shall be granted if there are no "genuine issues as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## ANALYSIS

### 1.     Collateral Estoppel

In support of his motion for summary judgment, the defendant first argues that the plaintiff's action is barred by the doctrine of collateral estoppel, based on the plaintiff's previous action in state court. The magistrate judge has recommended denying the defendant's motion for summary judgment on this ground. Neither party has filed any objections to the magistrate judge's recommendation. Therefore, the court will adopt this portion of the magistrate judge's Report and Recommendation and deny the defendant's motion for summary judgment on the basis of collateral estoppel. See Wells v. Shriners Hospital, 109 F.3d 198, 199 (4th Cir. 1997) (failure to file written objections to the Report and Recommendation constitutes a waiver of the right to further contest those issues).

### 2.     Qualified Immunity

The defendant also argues that he is entitled to qualified immunity. Qualified immunity protects government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining the applicability of a qualified immunity defense, the court must engage in a two-step analysis. See Saucier v. Katz,

4

533 U.S. 194, 201 (2001). The "threshold question" in the qualified immunity analysis on summary judgment is whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional or statutory right. Id. If the answer to this question is "no," the analysis ends and the plaintiff cannot prevail. Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002). If the answer is "yes," the court "must then consider whether, at the time of the violation, the asserted right was clearly established, that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 201-201)). The United States Court of Appeals for the Fourth Circuit has emphasized that qualified immunity protects government officials from "bad guesses in gray areas" and it ensures that they may be held personally liable only "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

     a.    Plaintiff's First Amendment Claim

In his first claim, the plaintiff alleges that the defendant violated his First Amendment right to practice his religion by deferring any action on the plaintiff's Common Fare Diet application for nine months. The court agrees with the magistrate judge that the defendant is entitled to qualified immunity with respect to this claim.

It is well established that the Free Exercise Clause of the First Amendment extends to prison inmates. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001). However, an inmate's constitutional rights can be limited to achieve legitimate penological objectives. O'Lone, 482 U.S. at 348. A regulation or decision that infringes upon a prisoner's constitutional rights will nevertheless be upheld if it is "reasonably related" to promoting a legitimate penological interest. Turner v. Safley, 482 U.S.

78, 87 (1987). In order to determine whether a regulation or decision is permissible, the court must consider four factors: (1) whether the disputed decision is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Id. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation or decision is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

Applying the Turner factors to this case, the court agrees with the magistrate judge that the defendant's decision to defer any action on the plaintiff's application was reasonable. First, there is a logical connection between the defendant's decision and the legitimate governmental interest underlying the decision. The Virginia Department of Corrections has a legitimate interest in maintaining a simplified food service within its prisons. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993). Second, there is no indication that the plaintiff has no alternative means of exercising his religion. Considering the third factor, prison resources would be adversely affected if the plaintiff received the Common Fare Diet without having to demonstrate that his religious beliefs are sincerely held. Courts have recognized that the cost of providing special diets can be significant. See Kahey v. Jones, 836 F.2d 948, 951 (5th Cir. 1988); Salaam v. Collins, 830 F. Supp. 853, 861 (D. Md. 1993); Jenkins v. Angelone, 948 F. Supp. 543, 548 (D. Va. 1996). Moreover, any perceived differential treatment among the inmate population could

6

pose a threat to prison morale. Kahey, 836 at 951. Lastly, given the plaintiff's decision to change religions in order to receive the Common Fair Diet and his previous withdrawal from Ramadan, there appears to be no sufficient alternative method of evaluating the sincerity of the plaintiff's religious beliefs. Therefore, the defendant's decision to defer any action on the plaintiff's application until after Ramadan 2005 did not violate the plaintiff's First Amendment rights.

Although it is unnecessary to reach the second step of the qualified immunity analysis, the court notes that even if the defendant had acted unlawfully, the defendant's decision did not transgress any bright First Amendment lines. Therefore, the defendant is entitled to qualified immunity, and the court will grant his motion for summary judgment with respect to the plaintiff's First Amendment claim.

     b.    <u>Plaintiff's RLUIPA Claim</u>

Although the plaintiff referred to RFRA in his complaint, the magistrate judge construed the plaintiff's RFRA claim as one under RLUIPA. Section 3(a) of RLUIPA states as follows:

> [N]o government shall impose a substantial burden on religious excercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling interest.

42 U.S.C. § 2000cc-1(a). Section 4(a) of the statute creates a private right of action that allows any person to "assert a violation of this chapter as a claim or defense in a judicial proceeding" and to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

Even if the court assumes that the plaintiff has alleged sufficient facts to establish a claim under RLUIPA, the court concludes that the defendant is entitled to qualified immunity with

7

respect to this claim.[4] At the time the defendant decided to defer any action on the plaintiff's Common Fare Diet application, the applicability of RLUIPA to state officials was not clearly established. As previously explained, the United States Supreme Court ruled in <u>City of Boerne</u>, 521 U.S. 507, that RFRA was invalid as applied to states and localities. After Congress enacted RLUIPA in an attempt to correct the constitutional deficiencies that the Supreme Court had identified in RFRA, courts disagreed as to whether RLUIPA was valid as applied to state organizations and facilities. <u>See</u> <u>Cutter v. Wilkinson</u>, 349 F.3d 257 (6th Cir. 2003), <u>rev'd</u>, 125 S. Ct. 2113 (May 31, 2005); <u>Madison v. Riter</u>, 240 F. Supp. 2d 566 (W.D. Va. 2003), <u>rev'd</u>, 355 F.3d 310 (4th Cir. 2003). Given this history of controversy over the viability of RLUIPA in the prison context, the court concludes that the plaintiff's rights under RLUIPA were not so clearly established at the time of the defendant's decision that any reasonable official would have known that deferring action on the plaintiff's application for nine months violated his statutory rights. Accordingly, the defendant is also entitled to qualified immunity with respect to the plaintiff's RLUIPA claim.

## CONCLUSION

For the reasons stated, the court will adopt the magistrate judge's Report and Recommendation. Inasmuch as the defendant enjoys immunity from any award of monetary damages, summary judgment shall be entered in favor of the defendant. The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff and counsel of record for the defendant.

---

[4] It appears that the defendant did not construe the plaintiff's complaint to assert a claim under RLUIPA. However, the defendant does argue that his decision did not violate clearly established statutory or constitutional rights.

8

ENTER: This _29th_ day of September, 2005.

_Judy Conrad_
United States District Judge